# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| **AARON SKALKA AND** ) | |
| **EMMA SKALKA,** ) | |
| 720 Fantail Court ) | |
| Annapolis, MD 21401, ) | |
| and ) | |
| **EVAN LEE AND JENNIFER LEE,** ) | |
| 322 West Pine Street ) | |
| Florence, SC 29501, ) | |
| and ) | |
| **RYAN SCHEEL AND** ) | |
| **JESSICA SCHEEL,** ) | |
| 2431 Milkhouse Avenue ) | |
| Bozeman, MT 59718, ) | CASE NO. 16-CV-00107 |
| and ) | |
| **ROBERT AYERS AND** ) | |
| **HEATHER AYERS,** ) | |
| 2410 Elmhurst Drive ) | |
| Fayetteville, NC 28304, ) | |
| and ) | |
| **FRANK ADOPTION CENTER,** ) | |
| 200 S. Main Street ) | |
| Wake Forest, NC 27587, ) | |
| ) | |
| **PLAINTIFFS-PETITIONERS,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **THE HONORABLE JEH JOHNSON,** ) | |
| Secretary, U.S. Department of Homeland ) | |
| Security, in his official capacity, ) | |
| U.S. Department of Homeland Security, ) | |
| Washington, DC 20528, ) | |
| and ) | |
| **LEON RODRIGUEZ,** ) | |
| Director, U.S. Citizenship and Immigration ) | |
| Services, in his official capacity, ) | |
| 111 Massachusetts Avenue, NW ) | |
| Washington, DC 20529, ) | |
| and ) | |

**THE HONORABLE JOHN KERRY,**   )
Secretary, U.S. Department of State,   )
in his official capacity,   )
2201 C Street, NW   )
Washington, DC 20520,   )
   )
   **DEFENDANTS-RESPONDENTS.** )
_____)

## PETITION FOR WRIT OF MANDAMUS AND
## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.     American families have been adopting abandoned children from the poverty-stricken nation of Nepal since 1976. As a result, thousands of abandoned Nepalese children have escaped a life of poverty and isolation—spent in either a Nepalese orphanage or, worse, on the streets of Nepal—and are now part of caring and loving families in the United States. The ability of these families to bring these new members of their family back to the United States was left undisturbed for over twenty years.

2.     Plaintiffs-Petitioners Aaron and Emma Skalka, Evan and Jennifer Lee, Ryan and Jessica Scheel, and Robert and Heather Ayers are four such families seeking to adopt abandoned children from Nepal. Plaintiff-Petitioner Frank Adoption Center is a non-profit organization dedicated exclusively to facilitating these and other American families through the Nepalese adoption process.

3.     In August 2010, the United States Department of State ("DOS") and United States Citizenship and Immigration Services ("USCIS"), an agency of the Department of Homeland Security ("DHS"), jointly issued a blanket suspension of *all* adoptions of abandoned children from Nepal ("Blanket Suspension") on the basis of a legally unsupported view that

documentation and testimony from relevant individuals regarding the circumstances surrounding the children's abandonment by their parents are *per se* unreliable. The Blanket Suspension remains in place to this day.

4.     The Blanket Suspension is maintained despite the fact that DOS and USCIS collectively approved all 62 I-600 Petitions to Classify Orphan as an Immediate Relative ("I-600 Petitions") that had been filed and were still pending at the time of the suspension. After investigating each of these I-600 Petitions, DOS and USCIS did not find any instances of fraud or inaccuracy relating to any of them, refuting any conclusion of systemic fraud in the Nepalese adoption process.

5.     Plaintiffs-Petitioners Mr. and Mrs. Skalka thus seek to compel Defendants-Respondents to adjudicate Plaintiffs-Petitioners' I-600 Petitions via a writ of mandamus and/or via the relief under the Administrative Procedure Act ("APA"). 28 U.S.C. § 1361; 5 U.S.C. §§ 551, 701 *et seq.*

6.     Plaintiffs-Petitioners Mr. and Mrs. Skalka, Dr. and Mrs. Lee, Mr. and Mrs. Scheel, Mr. and Mrs. Ayers, and Frank Adoption Center seek to compel Defendants-Respondents to remove the Blanket Suspension via the relief under the APA. 5 U.S.C. §§ 551, 701 *et seq.*

## JURISDICTION

7.     This Court has jurisdiction over the action under 28 U.S.C. § 1331 (federal question), the APA, 5 U.S.C. §§ 551, 701 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361. Plaintiffs-Petitioners additionally seek relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

## VENUE

8.      Venue is proper in this Court under 28 U.S.C. § 1391(c) because Defendants-Respondents Johnson, Rodriguez, and Kerry are officers of the United States, acting in their official capacities, and the DHS, USCIS and DOS, which are headed by Defendants-Respondents Johnson, Rodriguez and Kerry, respectively, are agencies of the United States.

9.      Venue is also proper in this Court under 28 U.S.C. § 1391(e)(1) because, upon information and belief, Defendants-Respondents Johnson, Rodriguez, and Kerry work and/or reside in the District of Columbia.

## EXHAUSTION

10.     There are no administrative remedies available for Plaintiffs-Petitioners to exhaust.

11.     Although there is an administrative appeal process for the denial of an I-600 Petition, DOS and USCIS refuse to adjudicate Plaintiffs-Petitioners Mr. and Mrs. Skalka's I-600 Petition because of the Blanket Suspension placed on the adoption of abandoned children in Nepal.  *See, e.g.,* Ex. 1 (November 5, 2015 Email from DOS to Mr. and Mrs. Skalka) and Ex. 2 (Letter received on December 5, 2015 from USCIS to Mr. and Mrs. Skalka)[1].  Any appeal of the denied I-600 Petition will be futile as DOS and USCIS did not review the merits and instead relied solely on the Blanket Suspension for their decision.

---

[1] Under LCvR 5.4(f), the name of a minor child has been redacted.  Other potentially personally-identifying information in the exhibit is also redacted.  A motion for a protective order is forthcoming.

## PARTIES

12.     Plaintiff-Petitioner Aaron Skalka and Emma Skalka are United States citizens and residents of Annapolis, Maryland.  They are married and have one child, whom they adopted from Nepal.

13.     Plaintiffs-Petitioners Dr. Evan Lee and Jennifer Lee are United States citizens and residents of Florence, South Carolina.  They are married and have one child, whom they adopted from Nepal.

14.     Plaintiffs-Petitioners Ryan Scheel and Jessica Scheel are United States citizens and residents of Bozeman, Montana.  They are married and have one child, whom they adopted from Ecuador.

15.     Plaintiffs-Petitioners Robert Ayers and Heather Ayers are United States citizens and residents of Fayetteville, North Carolina.  They are married and have one child.

16.     Plaintiff-Petitioner Frank Adoption Center is a non-profit organization located in Raleigh, North Carolina.  Frank Adoption Center is a North Carolina-licensed adoption service provider, with Hague accreditation by the Council on Accreditation.[2]  Frank Adoption Center is also a Nepal-approved international adoption service provider.  Frank Adoption Center's stated mission is to provide lasting, permanent homes to orphaned and abandoned children worldwide and to do so in a manner that is timely, cost effective and transparent for all parties involved.

17.     Defendant-Respondent the Honorable Jeh Johnson is sued in his official capacity as Secretary of DHS.  As Secretary of DHS, Mr. Johnson is responsible for the administration

---

[2] Hague accreditation "signifies that an agency meets the standards founded in the [Hague] Convention, the Intercountry Adoption Act, and the Universal Accreditation Act.  This status indicates that [Council on Accreditation ("COA")] has concluded that the agency or person conducts services in substantial compliance with the standards, and that COA monitors and oversees its performance . . . ."  *Hague Accreditation and Approval*, Council on Accreditation, (Jan. 5, 2016 at 2:13 PM), http://coanet.org/accreditation/hague-accreditation-and-approval/.

and enforcement of the immigration laws of the United States, including the Blanket Suspension, and is authorized to delegate such powers and authority to subordinate DHS employees. 8 U.S.C. § 1103; 8 C.F.R. § 2.1. He has the ultimate decision-making authority over Plaintiffs-Petitioners Mr. and Mrs. Skalka's I-600 Petition with USCIS. DHS headquarters is located in Washington, DC.

18. Defendant-Respondent Leon Rodriguez is sued in his official capacity as Director of USCIS, an agency within DHS. As Director of USCIS, Mr. Rodriguez is responsible for the overall administration of USCIS and the implementation and enforcement of the immigration laws of the United States, including the Blanket Suspension. As such, he has decision-making authority over Plaintiffs-Petitioners Mr. and Mrs. Skalka's I-600 Petition with USCIS. USCIS headquarters is located in Washington, DC.

19. Defendant-Respondent the Honorable John Kerry is sued in his official capacity as Secretary of DOS. As Secretary of DOS, Mr. Kerry is responsible for overseeing Defendants-Respondents Johnson and Rodriguez in their administration and enforcement of the immigration laws of the United States, including the Blanket Suspension. DOS headquarters is located in Washington, DC.

## FACTS

20.     International adoptions from Nepal started in 1976, when Nepali law was amended to expressly provide for international adoption.  Nepali law stated:

> If any foreign national willing to adopt Nepali nationals eligible to be adopted under the code; the government of Nepal viewing the economic status and moral character of such foreign nationals may grant permission of adoption specifying appropriate conditions provided such foreign nationals have recommendation of the government or embassy of their Nation.

Nepal Code, 1976 Amendment to National Code of 1964, Clause 12 of Adoption Section.  Such adoptions continued relatively unimpeded through August 2010, except for a brief period of closure from 2007 to 2009.

### Statutory and Regulatory Background

21.     A United States citizen who adopts a child from a country outside the United States may apply for the child to reside permanently in the United States with the citizen.  Under 8 U.S.C. § 1154(a)(1)(A)(i), a United States citizen "may file a petition," known as an I-600 Petition, on behalf of an adopted child claiming the child is entitled to classification as an "immediate relative."  The term "immediate relative," as applicable to the United States citizen's petition, is defined as the "children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age."  8 U.S.C. § 1151(b)(2)(A)(i).

22.     Upon the filing of an I-600 Petition, USCIS is authorized to investigate the veracity of the facts asserted therein.  To the extent that USCIS does not have a field office in the country in which the child currently resides, the investigation is conducted out of the U.S. Embassy in that country.  *See* Ex. 3 (USCIS, "Adoption Information: Nepal" at 6, "Processing Form I-600 Petition Filed on Behalf of a Nepalese Child"); 8 C.F.R. §§ 204.3(k)(1)-(2).     In

Nepal, USCIS does not have a field office and thus the U.S. Embassy, located in Kathmandu, conducts the investigation.

23.     Under 8 U.S.C. § 1154(b), "[a]fter an investigation of the facts [by USCIS and/or DOS] in *each case* . . . the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien on behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title, . . . approve the petition and forward one copy thereof to the [DOS].  The Secretary of State shall then authorize the consular officer concerned to grant the preference status."  (emphasis added).  Thus, 8 U.S.C. § 1154(b) mandates that an investigation of "*each case*" be conducted.  *See also* 8. C.F.R. § 204.3(h); 8 C.F.R § 204.3(k)(1) ("An I-604 investigation *must* be completed in *every* orphan case.") (emphases added).

## Process of Adoptions of Nepalese Children by U.S. Families

24.     USCIS, which is part of DHS, is the U.S. agency in charge of adjudicating inter-country adoptions.

25.     The Ministry of Women, Children and Social Welfare of Nepal ("MWCSW") is Nepal's governmental entity that handles the adoptions.

26.     When a U.S. citizen seeks to adopt a child from Nepal, the first step is to choose a U.S. adoption service provider, such as Plaintiff-Petitioner Frank Adoption Center.  The adoption center must be licensed in the U.S. state in which it operates and approved as an international adoption service provider by Nepal.  *See* Ex. 4 at 4 (DOS, "Nepal: How To Adopt").

27.     The adoption service providers "are responsible for submitting the prospective adoptive parents' dossier and other required documents through their local representative to the [MWCSW]."  *Id.* at 6*.*  The U.S. adoption service provider is also the point-of-contact for the

MWCSW and provides the U.S. Embassy in Kathmandu with the required documents for the I-600 Petition and immigrant visa application. *Id.*

28.     Once the required documents have been provided to the U.S. Embassy, applicants then file the I-600A, Application for Advance Processing of an Orphan Petition ("I-600A Petition") with USCIS. *See generally* Exhibit 4.

29.     If the I-600A Petition is approved, the MWCSW will provide the applicants with a referral of a child. *Id.* at 5.

30.     After the Blanket Suspension was announced, USCIS issued "Special Instructions" for families seeking to adopt children from Nepal that changed the sequence of events for adoptions. *See* Ex. 5 (USCIS, "Special Instructions for How and When to File Adoption Petitions on Behalf of Nepali Children"). Previously, families adopted their Nepalese child prior to submitting their I-600 Petition. *See* Ex. 4; Ex. 5. Now, after the referral is made but prior to adoption, families seeking to adopt children file their I-600 Petition with the DOS in Kathmandu, Nepal. *See* Ex. 5.

31.     The filing of the I-600 Petition triggers DOS's duty to conduct an investigation ("I-604 Investigation") to determine whether the child is in fact an orphan. *See id.*; 8 C.F.R. § 204.3(k)(1) ("An I-604 investigation must be completed in every orphan case."). Although DOS is authorized to conduct an I-604 Investigation and *approve* an I-600 Petition, it does not have the power to *deny* an I-600 Petition. *See* Ex. 3; 8 C.F.R. §§ 204.3(k)(1)-(2). If DOS determines after an investigation that an I-600 Petition is "not clearly approvable," the case is sent to USCIS's field office in New Delhi, India. *See* 8 C.F.R. § 204.3(h)(11).

32.     Under such circumstances, USCIS will then review the I-604 Investigation findings and the I-600 Petition and either approve the Petition, deny the Petition or issue a

"Request for Evidence," which calls for petitioners to conduct and document an in-depth investigation into the child's orphan status that supplements the I-604 Investigation.

33.     If DOS or USCIS determines that the child is an "orphan," the adoptive parents may then travel to Nepal and complete the Nepalese adoption process. *See* Ex. 4 & 5. The I-600 Petition is then formally approved by the U.S. Embassy in Nepal.

34.     Upon approval of the I-600 Petition, the adopting person would initiate the immigrant visa processing with the U.S. Embassy in Nepal to bring their child home. *See id.*

### DOS and USCIS Unlawfully Suspend the Processing of the Adoption of Abandoned Children in Nepal

35.     The processing of new adoption cases involving abandoned children from Nepal was suspended by DOS and USCIS on August 6, 2010. *See* Ex. 6 (USCIS and DOS, "U.S. Suspends Processing New Nepal Adoption Cases Based on Abandonment"). DOS and USCIS jointly issued the Blanket Suspension because, as alleged in the Blanket Suspension notice, documentation relating to the orphan status of the child was unreliable, investigations were "routinely hindered by the unavailability of officials," and "[p]olice and orphanage officials" refused to cooperate. *See id.*; Ex. 2.

36.     The Blanket Suspension, which cites a single occurrence of fraud, was issued in contravention of clear statutory language requiring an investigation into "*each*" I-600 Petition, and in any event lacks sufficient factual support, is arbitrary and capricious, and is an abuse of agency discretion.

37.     Under 8 U.S.C. § 1154(b), "[a]fter an investigation of the facts [by DOS and/or USCIS] in *each case* . . . the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien on behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title, . . . approve the petition and forward one copy

10

thereof to the [DOS].  The Secretary of State shall then authorize the consular officer concerned to grant the preference status."  (emphasis added).  Thus, 8 U.S.C. § 1154(b) mandates that an investigation of *each case* occur.  *See also* 8 C.F.R § 204.3(k) ("An I-604 investigation *must* be completed in e*very* orphan case.") (emphasis added).

38.     Moreover, even if 8 U.S.C. § 1154(b), 8 C.F.R § 204.3(k), or any other law or regulation permits agency discretion to do anything less than conduct an I-604 Investigation for *each* I-600 Petition filed in pursuance of a Nepalese adoption, DOS and USCIS lacked any evidentiary basis to suspend *all* approvals of I-600 Petitions for adoptions of abandoned Nepalese children, as was done through the issuance of the Blanket Suspension.

39.     At the time of the Blanket Suspension, 62 families had their I-600 Petitions pending.  To address these pending Petitions, DOS conducted an I-604 Investigation for each of the 62 families.

40.     At the conclusion of DOS's investigations, DOS approved six of the I-600 Petitions and sent the other 56 I-600 Petitions to the USCIS field office in New Delhi, India. USCIS approved one of the 56 cases and issued a "Request for Evidence" for the other 55 I-600 Petitions.

41.     After the 55 I-600 Petitioners responded to the "Requests for Evidence" with documentation evidencing their prospective adoptee's orphan status, USCIS concluded that all Petitioners met their burden of proof, and ultimately approved all 55 Petitions.

42.     Thus, of the 62 I-600 Petitions that were pending and investigated at the time the Blanket Suspension was issued, even after extensive investigation, not a single Petition was found to be based on fraudulent documentation or false witness testimony.  The absence of fraud in a dataset of this size refutes DOS and USCIS's conclusion, as embodied in the Blanket

Suspension, that the adoption process warrants a Blanket Suspension of *all* abandonment-based adoptions in Nepal.

43.     Since August 6, 2010, Defendants-Respondents DOS and USCIS have maintained the Blanket Suspension and their position that they will not adjudicate any I-600 Petitions for abandoned children from Nepal.  *See* Ex. 1 and 2.

**Discord between USCIS and DOS Regarding Issuance of the Blanket Suspension**

44.     The documented discord between DOS and USCIS regarding the Blanket Suspension further illustrates the questionable legal and factual grounds on which it is based.

45.     Before the United States Government suspended the processing of adoptions of abandoned children in Nepal, there were disagreements between DOS and USCIS about the information available that could warrant a suspension.

46.     For example, in an email dated June 14, 2010, Michael Regan, a DOS official, commented to Joanna Ruppel, Chief of International Operations, Refugee, Asylum, and International Operations ("RAIO") at USCIS and Whitney Reitz, Programs Branch Chief of International Operations, RAIO, on the possibility of suspending abandonment-based adoptions in Nepal, making sweeping allegations of fraud but citing no evidence supporting them:

> I know you are both tied up with Russia most of this week, but I think we need to start talking about the possibility of a Cambodia-type suspension in Nepal.  I know, of course, that such a move is fraught with questions, but if Nepal cases continue to prove to be fraught with fraud, yet without the evidence that would sustain a NOID [Notice of Intent to Deny] or NOIR [Notice of Intent to Revoke], we will need to consider seriously taking this step.

47.     In an email dated June 14, 2010, responding to Mr. Regan,  Ms. Ruppel expressed skepticism of the prospect of a Blanket Suspension because USCIS might not have the legal authority and she knew of no evidence supporting the position that the I-604 Investigations were unable to uncover fraud:

It would be most helpful if you could provide concrete evidence that would support a suspension, to include stats and the types of fraud you are seeing and **why it can't be uncovered via the 604 process**.  I have seen some e-mail traffic on this and cables, but have not yet seen the type of information that could lead to suspension should we have the authority to go there.  We will discuss with counsel what we think we can and cannot do legally, which will inform our policy decisions.

48.     In an email dated June 14, 2010, another USCIS official, Whitney Reitz, commented to Michael Regan and Joanna Ruppel that DOS "does not have a smoking gun or hard and fast proof" of fraud:

 [W]e all agree that this process will not fix the underlying problem that post [DOS] thinks essentially all cases in Nepal [are] suspect even though they do not have a smoking gun or hard and fast proof.  I agree with Joanna that we need to have the larger conversation, with our lawyers, about what we can do when we suspect a government is not on the up and up [on] the adoption process.

### Plaintiffs-Petitioners' Current Efforts to Adopt Nepalese Children

***Plaintiffs-Petitioners Aaron Skalka and Emma Skalka***

49.     Plaintiffs-Petitioners Mr. and Mrs. Skalka adopted their first child from Nepal in December 2010.

50.     Mr. and Mrs. Skalka now seek to adopt a second child from Nepal.  Their I-600A Petition was filed on November 29, 2012, approved on February 7, 2013, and the MWCSW has matched them with a Nepalese child.

51.     On June 23, 2015, Plaintiffs-Petitioners Mr. and Mrs. Skalka filed with DOS in Katmandu, Nepal, an I-600 Petition, with the applicable fee and investigation results, to obtain approval that the child with whom they have been matched was an abandoned orphan.

52.     Mr. and Mrs. Skalka then updated their expired I-600A and got approval to move forward with their I-600 Petition.

53.     Notwithstanding the Blanket Suspension, Plaintiffs-Petitioners Mr. and Mrs. Skalka retained, at significant cost to them, an experienced investigator to conduct an investigation of the background of the child they seek to adopt in support of their I-600 Petition. The investigation conducted was as thorough as the 2010 investigation that supported the approval of their I-600 Petition for their first adopted child in 2010.   The findings of that investigation strongly support the conclusion that the child with whom they have been matched was in fact abandoned by her parents.

54.     On November 5, 2015, Defendant-Respondent DOS refused to adjudicate Plaintiffs-Petitioners Mr. and Mrs. Skalka's I-600 Petition.   *See* Ex. 1.   DOS stated that "[u]nfortunately, the child matched with your family was abandoned at a hospital, and falls within the 2010 suspension of adjudication of abandonment-based petitions. The I-600 Petition will be returned to USCIS in Delhi as not clearly approvable." *Id.*

55.     After DOS's determination that the Skalkas' I-600 Petition was not clearly approvable, USCIS issued a letter to Mr. and Mrs. Skalka that stated:

> **In light of the current USG suspension** for Nepalese children reported as found abandoned, **USCIS New Delhi is unable to proceed with the adjudication** of your Form I-600 petition and will instead administratively close your case. No further action will be taken on your case until the USG lifts the suspension of processing of Form I-600 petitions filed on behalf of children from Nepal reported to have been found abandoned. USCIS and State are continuously monitoring the situation in Nepal and if the suspension is lifted, USCIS will notify you and reopen your case for processing.

Ex. 2 (emphases added).

### *Plaintiffs-Petitioners Evan and Jennifer Lee*

56.     Plaintiffs-Petitioners Dr. and Mrs. Lee filed their I-600A Petition on February 26, 2014 and it was completed on February 11, 2015.   On November 21, 2015, MWCSW matched

the Lees with a child.  In light of the DOS' and USCIS' decisions as to the Skalkas' I-600 Petition, both of which were based on the Blanket Suspension, the Lees have not submitted an I-600 Petition because it is clear that any such petition would be rejected based on the Blanket Suspension.

***Plaintiffs-Petitioners Ryan Scheel and Jessica Scheel***

57.     Plaintiffs-Petitioners Mr. and Mrs. Scheel filed their I-600A Petition on March 28, 2014 and it was completed on April 25, 2014.  Mr. and Mrs. Scheel are waiting for the MWCSW to match them to a child.  In light of the DOS' and USCIS' decisions as to the Skalkas' I-600 Petition, both of which were based on the Blanket Suspension, the Scheels have not submitted an I-600 Petition because it is clear that any such petition would be rejected based on the Blanket Suspension.

***Plaintiffs-Petitioners Robert Ayers and Heather Ayers***

*58.*     Plaintiffs-Petitioners Mr. and Mrs. Ayers filed their I-600A Petition on May 27, 2014 and it was completed on July 9, 2014.  On December 27, 2015, MWCSW matched the Ayerses with a child.  In light of the DOS' and USCIS' decisions as to the Skalkas' I-600 Petition, both of which were based on the Blanket Suspension, the Ayers have not submitted an I-600 Petition because it is clear that any such petition would be rejected based on the Blanket Suspension.

***Plaintiff-Petitioner Frank Adoption Center***

59.     Plaintiff-Petitioner Frank Adoption Center, a non-profit organization, has as its mission to provide lasting, permanent homes to orphaned and abandoned children worldwide and to do so in a manner that is timely, cost effective and transparent for all parties involved.

60.     Frank Adoption Center has been, and will continue to be, unable to fulfill this mission since the Blanket Suspension halted all adoptions by U.S. citizens of abandoned Nepalese children in August 2011.  It will remain unable to fulfill this mission unless and until the Blanket Suspension is lifted.

## CLAIMS FOR RELIEF

## COUNT ONE – APA (5 U.S.C. §§ 701 *et seq.*)

61.     Plaintiffs-Petitioners re-allege and incorporate by reference paragraphs 1 through 60 above.

62.     Plaintiffs-Petitioners have suffered a "legal wrong" or have been "adversely affected or aggrieved" by agency action.  5 U.S.C. § 702.  Plaintiffs-Petitioners are each a person aggrieved by agency action for which there is no other adequate remedy in a court.  5 U.S.C. § 704.

63.     Defendants-Respondents have unlawfully, and in contravention of a clear statutory and regulatory mandate, instituted and maintained the Blanket Suspension, and in accordance with the Blanket Suspension have unlawfully refused to adjudicate Plaintiffs-Petitioners Mr. and Mrs. Skalka's I-600 Petition.

64.     Defendants-Respondents' issuance and maintenance of the Blanket Suspension, and their refusal to adjudicate Plaintiffs-Petitioners Mr. and Mrs. Skalka's I-600 Petition, are unsupported by substantial evidence, and are arbitrary and capricious, and otherwise not in accordance with law.

65.     Defendants-Respondents' issuance and maintenance of the Blanket Suspension, and their refusal to adjudicate any I-600 Petition for abandoned children, such as those either already or likely to be matched with Plaintiffs-Petitioners Lees, Plaintiffs-Petitioners Ayers, and

Plaintiffs-Petitioners Scheels, are unsupported by substantial evidence, and are arbitrary and capricious, and otherwise not in accordance with law.

66.    As a result of the Blanket Suspension, Plaintiff-Petitioner Frank Adoption Center is unable to fulfill its mission to provide lasting, permanent homes to orphaned and abandoned children worldwide and to do so in a manner that is timely, cost effective and transparent for all parties involved.

67.    Plaintiffs-Petitioners are entitled to injunctive relief to "compel agency action unlawfully withheld or unreasonably delayed" and to "hold unlawful and set aside agency action" that, as here, is not in accordance with the law.  5 U.S.C. §§ 706(1), (2); *see also* 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it.").

## COUNT TWO – MANDAMUS (28 U.S.C. § 1361)

68.    Plaintiffs-Petitioners re-allege and incorporate by reference paragraphs 1 through 67 above.

69.    Plaintiffs-Petitioners Mr. and Mrs. Skalka are entitled to mandamus relief because Defendants-Respondents have a clear, non-discretionary duty to act on their I-600 Petition, and Mr. and Mrs. Skalka have a clear right to have their I-600 Petition adjudicated, and lack an adequate alternative remedy.

70.    Section 555(b) of the APA and Section 204.3(k) of the Code of Federal Regulations impose on defendants a non-discretionary duty to adjudicate Plaintiffs-Petitioners Mr. and Mrs. Skalka's I-600 Petition.  5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency

shall proceed to conclude a matter presented to it."); *see also* 8 C.F.R. § 204.3(k) ("An I-604 investigation must be completed in every orphan case.").

71.     Despite this clear duty, Defendants-Respondents refuse to adjudicate Plaintiffs-Petitioners Mr. and Mrs. Skalka's I-600 Petition and continue to abide by the Blanket Suspension without any legal authority.

72.     Furthermore, despite this clear duty, Defendants-Respondents' refusal to adjudicate any I-600 Petition and their maintenance of the Blanket Suspension regarding abandoned children, such as those either already or likely to be matched with Plaintiffs-Petitioners Lees, Plaintiffs-Petitioners Ayers, and Plaintiffs-Petitioners Scheels, is without legal authority.

73.     As a result of the Blanket Suspension, Plaintiff-Petitioner Frank Adoption Center is unable to fulfill its mission to provide lasting, permanent homes to orphaned and abandoned children worldwide and to do so in a manner that is timely, cost effective and transparent for all parties involved.

74.     This cause of action is Plaintiffs-Petitioners' only means of remedying the harms caused by Defendants-Respondents' maintenance of the Blanket Suspension.

75.     Plaintiffs-Petitioners have no other adequate remedy either at law or in equity.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs-Petitioners pray that this Court:

76.     Assume jurisdiction over this action;

77.     Declare that Plaintiffs-Petitioners Mr. and Mrs. Skalka filed the necessary I-600 Petition;

78.     Declare that Plaintiffs-Petitioners Mr. and Mrs. Skalka are entitled to the process that flows from a properly filed I-600 Petition;

79.     Declare that the failure of the Defendants-Respondents to adjudicate and approve Plaintiffs-Petitioners Mr. and Mrs. Skalka's I-600 Petition is unlawful, contrary to the statute and regulations, without factual basis, arbitrary and capricious, and/or an abuse of discretion;

80.     Declare that Defendants-Respondents' Blanket Suspension of all abandoned adoption cases in Nepal is legally invalid;

81.     Compel Defendants-Respondents to effect performance of the duties of their respective agencies that are imposed upon them by law with regard to Plaintiffs-Petitioners Lees, Plaintiffs-Petitioners Ayerses, and Plaintiffs-Petitioners Scheels;

82.     Grant to Plaintiffs-Petitioners attorney's fees and court costs; and

83.     Grant such other and further relief as this Court deems proper under the circumstances.

Respectfully submitted,


/s/ Patrick Linehan
Patrick Linehan, Esq.
D.C. Bar number: 472183
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, N.W.
Washington, DC  20036-1795
Phone: (202) 429-3000
Fax: (202) 429-3902
plinehan@steptoe.com

*Attorney for Plaintiffs-Petitioners*


Dated this 20th day of January, 2016