UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AARON SKALKA, *et al.*,  )
                        )
       Plaintiffs,      )
                        )
       v.               )   Civil Case No. 16-107 (RJL)
                        )
JOHN F. KELLY[1], Secretary, U.S.  )
Department of Homeland Security, *et al.*,  )     **FILED**
                        )
       Defendants.      )     MAR 3 1 2017

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

St

## MEMORANDUM OPINION
(March 31, 2017) [Dkt. # 12]

Plaintiffs Aaron & Emma Skalka, Evan & Jennifer Lee, Ryan & Jessica Scheel, and Robert & Heather Ayers are four American couples who want to adopt orphaned children from the country of Nepal. Plaintiff Frank Adoption Center is an organization that seeks to facilitate those adoptions. These plaintiffs ("the couples" and "FAC") have brought suit against the various components of the U.S. Government who are in charge of enforcing the immigration policy that normally allows adoptive parents of orphaned children to apply for visas on their behalf.[2] They are challenging a 2010 policy, still in place today, that instructs U.S. immigration officials to stop investigating and processing

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the recently confirmed Secretary of the Department of Homeland Security, John F. Kelly, "is automatically substituted as a party" for the outgoing Secretary, Jeh C. Johnson, whom plaintiffs named in their Complaint.

[2] That is, the Secretary of the Department of Homeland Security, the Director of U.S. Citizenship and Immigration Services, and the Secretary of State.

orphan adoptions in Nepal due to unreliability or corruption they have encountered in dealing with the Nepalese system. They allege in their Complaint that the statute conferring power on the Secretary of State to issue visas to the relatives of U.S. citizens actually compels the agencies involved to complete an individualized investigation into each case, and therefore prohibits the indefinite delay that is the current policy of the Government toward orphan adoptions in Nepal. First Am. Compl. ¶ 24 [Dkt. #11] (citing 8 U.S.C. § 1154(b)). They seek either injunctive relief under the Administrative Procedure Act or a writ of mandamus instructing the Department of State and U.S. Citizen and Immigration Services ("USCIS") to investigate and process their adoption petitions. First Am. Compl. ¶¶ 62-76.

Currently before the Court is defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted [Dkt. #12].[3] For the reasons stated below, the Court GRANTS defendants' Motion to Dismiss the Complaint.

## BACKGROUND

Congress gave the Department of State the authority to grant visas to orphaned children in foreign countries when parents who intend to adopt them file an application on their behalf. The application, known as an I-600 petition, requests that the orphaned child be classified as an "immediate relative" and granted a visa to permanently reside in

---

[3] Defendants also move to dismiss under Rule 12(b)(1), arguing that FAC, the Ayers, and the Scheels do not have standing to bring these claims. See Defs.' MTD 13-17 [Dkt. #12] (challenging standing as to the Scheels, the Ayers, and FAC only); see also Oral Arg. Tr. 29:13-17 [Dkt. #22]. Standing must usually be addressed before a 12(b)(6) claim. But because I will have to reach the merits of the 12(b)(6) arguments at least as to the Skalkas and the Lees, and because I ultimately hold that the claims, which are common to all plaintiffs, are not claims upon which relief can be granted, I have no need to decide whether the other plaintiffs also lack standing.

the United States. 8 U.S.C. § 1154(a)(1)(A)(i). Parents who want to adopt from Nepal first apply to USCIS for a determination that they are fit to adopt. They then apply to the Nepalese government, which matches them with what it considers to be an orphan, issuing a "referral letter" naming the child. In order to qualify the matched child for a U.S. visa, the parents make their I-600 petition with the U.S. Embassy in Nepal. The goal of the I-600 petition, as it relates to this case, is to determine whether the child meets the statutory definition of an "orphan." The statutory definition requires either that

> (a) the child has no parents because each parent has either died or disappeared, or has abandoned, deserted, been separated from, or lost to the child; or that
>
> (b) the child has a sole or surviving parent who is incapable of providing the proper care and has irrevocably released the child for emigration and adoption.

*See* 8 U.S.C. § 1101(b)(1)(F). A child is "abandoned" if the birth parent has

> willfully forsaken all parental rights, obligations, and claims to the child, as well as all control over and possession of the child, without intending to transfer, or without transferring, these rights to any specific person(s).

8 C.F.R. § 204.3(b) (first prong of definition of abandonment). The I-600 petition triggers a consular officer to conduct what is called an I-604 investigation into the veracity of the child being orphaned (i.e., verifying documentation, researching the child's age, hometown, etc.). By regulation, a consular officer must complete this investigation "in every orphan case," and "[d]epending on the circumstances surrounding the case, the I-604 investigation shall include, but shall not necessarily be limited to,

3

document checks, telephonic checks, interview(s) with the natural parent(s), and/or a field investigation." 8 C.F.R. § 204.3(k)(1). The timing of such an investigation is not specified except that it must be completed "before a[n I-600] petition is adjudicated." *Id.* If the consular officer conducts a favorable I-604 investigation, he may approve the I-600 petition and the adoptive parents may apply for and obtain a visa for the child. If the officer determines the application is "not clearly approvable" based on his investigation, he refers it to the USCIS office in the jurisdiction. 8 C.F.R. § 204.3(k)(2). The I-604 investigation form declares that if there are "allegations or indications of fraud, child buying or other non-bona fide intent" the consular officer must "attach report and results of anti-fraud investigation to Form I-604 when complete." The USCIS office then reviews those findings and makes a final determination on the I-600 petition after providing the parents with notice and an opportunity to present contrary evidence.

Because the consular officers in Nepal were having continuous difficulty verifying reports of abandonment in the country, State and DHS jointly decided to suspend the processing of all I-600 applications for which Nepal is the home country and "abandonment" is the reason for considering the child orphaned. *See* First Am. Compl. ¶ 36 (investigations "routinely hindered by the unavailability of officials," and "[p]olice and orphanage officials" refused to cooperate); *see also* First Am. Compl., Ex. 6 [Dkt. #11-6]; *id.* Ex. 2 [Dkt. #11-2]. Essentially, those types of applications are automatically deemed "not clearly approvable" in the I-604 investigation phase, and automatically forwarded to the USCIS office in Nepal, which automatically issues a letter to the parents that the case is "administratively closed" until the suspension is lifted. The suspension

4

went into effect in August 2010. A U.S. delegation revisited the policy in November 2014, but decided the systemic issues with false or unverifiable reports in Nepal warranted keeping the suspension in place. *Id.* Ex. 3, at 4[4] [Dkt. #11-3].

Plaintiffs in this case are two American couples who have filed I-600 petitions (the Skalkas and the Lees), two couples who are not as far along in the process (the Scheels and the Ayers, *see* First Am. Compl. ¶¶ 58-59), and the Frank Adoption Center, which has attempted to facilitate adoptions from Nepal for Americans like these couples, *see id.* ¶¶ 60-61. The Skalkas filed their I-600 petition in June 2015 received notice in November 2015 that their petition was subject to the suspension. *Id.* ¶¶ 52-56. The Lees filed their I-600 petition in March 2016 and had not received a response as of April 2016. *Id.* ¶ 57.[5] Plaintiffs filed suit claiming the suspension is unlawful because there is a non-discretionary duty to process I-600 visa applications and to conduct I-604 investigations into the actual facts of an orphan case. They base this argument on the regulatory scheme explained above and the statutory mandate to process and investigate petitions that claim an alien is an immediate relative. The statute states:

> [a]fter an investigation of the facts [by USCIS and/or DOS] in *each case* . . . the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien on behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title, . . . approve the petition and forward one copy thereof to the Department of State. The Secretary of State shall then

---

[4] This page number refers to the pagination that was applied automatically by the electronic case filing system when the document was uploaded to this Court's docket.
[5] Plaintiffs provided an update on the status of the adoption requests for each couple at the oral argument hearing on January 24, 2017 [Dkt. #22].

>authorize the consular officer concerned to grant the preference status.

8 U.S.C. § 1154(b).

## STANDARD OF REVIEW

The immigration agencies move to dismiss plaintiffs' First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court must ascertain whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Although the Court must read the complaint's factual allegations in the light most favorable to the plaintiff, *Bell Atlantic Co v. Twombly*, 550 U.S. 544, 555 (2007), the Court is not required to accept legal conclusions cast in the form of factual assertions, *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002), and a claim that is premised on a faulty legal theory must be dismissed, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Nietzke v. Williams*, 490 U.S. 319, 327 (1989). In agency review of cases such as this, it is proper for the court to decide at the motion to dismiss stage whether plaintiffs have an actionable legal theory as to the requirement they allege binds the agency. *See e.g., People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1092-93, 1099 (D.C. Cir. 2015). The Court may even look outside the four corners of the complaint when the plaintiff pleads a specific theory for why the agency is bound, and attaches the relevant documents. *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006). At

bottom, the Court has been asked to resolve a purely legal question about the limits on agency discretion, and it is appropriate for the Court to settle it at this stage. *See Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) ("The entire case on review is a question of law, and only a question of law. And because a court can fully resolve any purely legal question on a motion to dismiss, there is no inherent barrier to reaching the merits at the 12(b)(6) stage."); *see also* Fed. R. Civ. P. 12(d) (even if converted to a Rule 56 motion for summary judgment, neither side claims there is other material "pertinent" to the legal questions resolved here).

## ANALYSIS

Plaintiffs plead a discrete failure to act on their specific visa petitions.[6] The standard by which a court reviews this type of agency inaction is the same under both § 706(1) of the APA and the Mandamus Act, 28 U.S.C. § 1361. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63-64 (2004); *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). The law imposes a general, but nondiscretionary, duty upon an administrative agency to pass upon a matter presented to it "within a reasonable time," 5 U.S.C. § 555(b), and authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003). The Court is empowered to redress

---

[6] Plaintiffs also plead a legal theory that the suspension is an affirmative final agency action that the Court should review under the "arbitrary, capricious," or "not in accordance with law" standard of 5 U.S.C. § 706(2). I do not think the standard of review would be materially different if I construed the suspension as an action under review rather than reviewing the inaction on plaintiffs' petitions. But in any event, the relief plaintiffs seek here is an order compelling action on their petitions, which relief is available under § 706(1) but not § 706(2). The latter sub-section only permits a court "to hold unlawful and set aside" agency action. Accordingly, I find that legal theory to be inapposite and I analyze this as an agency inaction case.

agency action "unlawfully withheld" only where the law makes "a specific, unequivocal command," and the requirement is for a "precise, definite act about which an official ha[s] no discretion whatever." *Norton*, 542 U.S. at 63 (internal quotations, alterations, and citations omitted). The touchstone is whether the action is one the agency is "*required to take.*" *Id.* at 64 (emphasis in original); *see also People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1097-99 (D.C. Cir. 2015).

If the agency does have a clear duty to act, and Congress has not prescribed a deadline for the action, the question becomes whether the agency's delay is unreasonable. *In re Core Commc'ns, Inc.*, 531 F.3d at 855. The central question in evaluating a claim of unreasonable delay is "whether the agency's delay is so egregious as to warrant mandamus." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (quoting *In re Core Commc'ns, Inc.*, 531 F.3d at 855). Our Circuit has made it clear that each "unreasonable delay" case "must be analyzed according to its own unique circumstances." *Id.* (quoting *Air Line Pilots Ass'n v. Civil Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984)). The factors a court should consider, though they are "hardly ironclad," were announced in *Telecommunications Research & Action Center v. FCC ("TRAC")*, 750 F.2d 70 (D.C. Cir. 1984). They include: any indication of the speed with which Congress expects the agency to proceed; the nature and extent of the interests prejudiced by delay, with particular concern for matters of "human health and welfare"; and the effect of expediting delayed action on agency activities of a competing or higher priority. *See TRAC*, 750 F.2d at 80; *see also Am. Hosp. Ass'n*, 812 F.3d at 189.

Where the agency action sought is one of many similar adjudications that the

8

agency must complete, the court should be even more cautious before intervening. *In re Barr Laboratories, Inc.*, 930 F.2d 72 (1991), our Circuit Court refused to grant relief, even though all the *TRAC* factors favored it, because "a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain." *Id.* at 75; *see also Mashpee*, 336 F.3d at 1100-01. That is because the plaintiff's injury stemmed in part from a lack of resources, and that is "a problem for the political branches to work out." 930 F.2d at 75. The Circuit Court also noted that "[t]he agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way. Such budget flexibility as Congress has allowed the agency is not for us to hijack." *Id.* at 76.

None of these standards for assessing agency inaction, nor any of the cases applying them, are a particularly good fit for a case like this one where the agency has decided, for a considered policy reason, to suspend processing what it admits are required adjudications on visa petitions. Indeed, the agencies promise to process the petitions as soon as doing so would be reliable and efficient. This is the very type of prioritizing and balancing of resources our Circuit Court acknowledged agencies are uniquely situated to calculate. In the end, however, the dispositive question is whether the suspension is both lawful and reasonable. Unfortunately for the plaintiffs, it is both !

Neither of plaintiffs textual citations—to the statute at 8 U.S.C. § 1154(b) and the regulation at 8 C.F.R. § 204.3(k)—provide a sufficient legal basis for the Court to conclude that the agencies are unjustified in suspending the visa petitions here until such

9

time as the information from the Nepalese government is sufficiently reliable to satisfy our agencies that the statutory requirements set by Congress are actually met. The use of "shall" in the statute relates to the Secretary's duty when, *and if*, the requirements of the statute are met. And the regulatory requirement to conduct an abandonment investigation merely prohibits issuing an orphan visa *prior* to an investigation taking place. It does not require the agencies to undertake these investigations on a particular regularized basis. In other words, it does nothing to limit the inherent discretion that the agencies have to manage the procedures for handling the large number of visa petitions they receive. *Cf. Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985) (decision not reviewable when it "involves a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," such as "the procedures it adopts for implementing [a] statute"). Moreover, the regulations themselves prescribe careful procedures for ensuring the accuracy of abandonment investigations. Put simply, it cannot be said that the existing regulations as a whole "require" the agencies to investigate an individual case to the point of complete satisfaction when the officers have genuine doubt about the reliability of their source. To say the least, evaluating the reliability of the foreign government's information is critical to exercising their discretionary duty. As such, the agency action here has not been unlawfully withheld.

The final, related, question is whether the delay in question is unreasonable. Applying the *TRAC* factors, I find that it is not. First, there is no deadline or timeframe prescribed by Congress for these investigations. To the contrary, Congress has given the agencies wide discretion in the area of immigration processing. *See Arpaio v. Obama*,

797 F.3d 11, 16 (D.C. Cir. 2015); *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997). Indeed, this is the very type of agency action, like the one *In re Barr*, 930 F.2d 72, that if compelled would presumably delay other adjudications. The Court would be outside its limited role in these cases if it required the agencies to invest the high degree of resources that would be necessary to accurately investigate plaintiffs' visa petitions, if possible, while others would suffer in response.

Next, I recognize that the nature of plaintiffs' interests, and that of any orphans in Nepal who would be adopted, is of the most sensitive kind and most certainly involves "human health and welfare." The agencies must therefore prioritize these cases consistent with the sense of urgency one would expect when familial interests at stake. But the last *TRAC* factor surely has a mitigating effect on that sense of urgency here. Expediting the agencies' delayed action in this situation would certainly have the effect of harming the "competing or higher priority" of accuracy. To say the least, accurately adjudicating whether a child has truly been abandoned by his or her parents is the first priority for the agency in this situation. Compelling agency action otherwise would insinuate the Court into the agencies' judgment about whether they could accurately adjudicate these cases. That sort of judgment is at the very heart of the expertise that should be exercised by a U.S. Government official who is intimately familiar with the facts in Nepal and not a District Court judge who is ordering agency action in Washington, D.C. Small wonder that every other country in the world appears to have

likewise suspended orphan adoptions in Nepal !⁷

Finally, I can't help but note that although it has been more than six years since the suspension went into effect, it has only been about two years since it was most recently reviewed by a U.S. delegation to Nepal. It has been even less time since the couples who are plaintiffs in this case submitted the petitions that should trigger investigation. First Am. Compl. ¶¶ 36, 44, 52, 57; *id.* Ex. 3, at 4. In my review of the comparable cases, a delay of this length does not typically require judicial intervention. *Compare Debba v. Heinauer*, 366 F. App'x 696 (8th Cir. 2010) (10 years to adjudicate a permanent resident application not unreasonable); *In re City of Virginia Beach*, 42 F.3d 881 (4th Cir. 1994) (four and a half years not unreasonable in an adjudication affecting health and human welfare); *Kokajko v. FERC*, 837 F.2d 524 (1st Cir. 1988) (a five year delay might be close to the unreasonable threshold because delay was "unexplained"). Moreover, as long as the agencies are regularly revisiting the question whether they can rely on Nepalese sources to provide accurate information, then they are not delaying materially longer than necessary. The agencies have represented, and the Court has no reason to doubt, that when the situation in Nepal is improved to the point of reliability, the couples' petitions will be reviewed with due haste. Accordingly, there is no plausible cause of action at this time under either the APA or the Mandamus Act because the agencies' action has not been unlawfully withheld or unreasonably delayed.

---

⁷ For a decision such as this, a Court would, at most, review for abuse of discretion to ensure the agencies are not using the problems in Nepal as a pretext for unlawful or unreasonable delay. If I were to engage in that sort of review for abuse of discretion in this case, it would be clear that this policy judgment is well within the agencies' discretion because it is undisputed that every other country has also suspended orphan adoptions in Nepal. *See* First Am. Compl., Ex. 6, at 2.

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendants' Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted. An Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge

13